Good morning, Your Honors. May it please the Court, Maureen O'Connor for Appellant American Empire. There are two main issues that urge reversal of the District Court's ruling in this matter. First and foremost, the District Court did not rule on American Empire's claims, but rather improperly overruled and acted as an appellate court in disregarding prior judgment of Judge Garifus. But that's not, that makes no sense. He didn't act as an appellate court. The question is whether he is bound by Judge Garifus' decision as a matter of collateral estoppel. Isn't that what the issue really is? American Empire understands that Judge Block was not bound by the ruling of Judge Garifus. Well, if he's not bound by it, then he can make his own independent decision as to whether your client is on the hook for this. We would submit that Judge Garifus' judgment was persuasive authority and there was no reason why it was not followed by Judge Block. No, I mean Judge Block disagreed with it. Now, so the question is whether Judge Block was right or wrong, not whether he was bound by Judge Garifus' opinion, which I think you just told me you agree that he was not. He was not bound, but the... So then the question is really, was Judge Block right or wrong? It has nothing to do with Judge Garifus. Okay, then I'll move on to, we submit that Judge Block was wrong. Judge Block essentially overlooked the basis for American Empire's claims in this case, which was American Empire did not, it did not have to defend and indemnify its insured because the insured hadn't paid premium on the policy. Magistrate Pollack in the earlier Eastern District case found that payment of premium is an expressed condition to coverage under the policies. American Empire brought this action seeking a determination that potential claims that would have been brought by parties to two underlying claims would be bound by Judge Garifus' judgment and that there was no... But you just told me that you, so you are saying that Judge Block was bound by Judge Garifus' opinion. Not bound, but... Well, but if he's not bound, then what does Judge Garifus have to do with this whatsoever? You keep going back to that. But I don't understand it. The question is, judged as a matter of first impression, since Judge Block was entitled to make his own decision, was he correct or incorrect about whether American Empire lines is obligated to defend, what's relied upon basically erroneous statements of the facts of the case, erroneous reliance on statutes which are inapplicable. Well, let me try to put to you some propositions. First, we're talking about the 2017 policy, right? Yes. And I take it that if the 2017 policy was in effect at the time of the accident, that you would be responsible for that, those costs, right? Provided that the insured had paid the premium. Provided that the insured had... Well, but the premium doesn't get billed until later on. The insured paid the retainer premium, and then later on there's going to be an inquiry into whether additional premiums are due. That's exactly why this relief is necessary. The nature of these policies is such that they are issued based upon the insured's own estimate of what their gross receipts will be for the upcoming policy period. After the policy period ends, the policy is written subject to audit. So an audit is done to determine what the insured's actual gross receipts were. Right. If it's greater than their estimate, then there's an additional premium owed, which is part of the total premium owed under the policy. So in this case, an audit was done after the policy period expired, which found that the insured owed a great deal of premium, $250,000. But what I'm having trouble understanding is in the real world in which people are relying on that coverage, you have a policy that appears to be in effect. Even when it is voided, it is voided effective, according to you, not according to Judge Block, who thinks this was ineffective. According to you, was voided as of May 2018, which is whatever that is, more than six That's just the point. It didn't rescind the policy. It canceled the policy, effective May 2018. Yes. And American Empire acknowledges that these claims took place before the date of cancellation. The issue here is not cancellation. And Judge Block Well, if it's not cancellation, what is it? The issue here is seeking a determination of not being obligated to provide coverage for policies for which the insured did not provide premium. So you're basically saying they were void from the beginning? A rescission policy would be seeking a declaration of being void ab initio, from the beginning. American Empire paid claims under this policy. They paid claims. These remaining claims where Ventura and IEJK are seeking to make claims under the policy because in the event they're not paid by December. But if it's not void from the beginning, how is it any different than a situation in which the policy had, as this one actually had, expired? You're still on the hook after the policy expires, right? Well, given the scenario... Just answer that question. Am I totally misguided about insurance to think that if there was no problem with paying the premiums or anything else, the accident occurs during the policy period, and then the policy expires at a certain point and is not renewed, you are still liable for the events that occurred during the pendency of the policy? Yes. Provided that the insured lives up to their end of the bargain as well. So if the policy were cancelled for non-payment, if the premiums were being paid on a monthly basis, and they stopped paying their premiums in May of 2018, and you cancelled the policy for a lack of payment of the May 2018 premium, wouldn't you still be responsible for paying the costs for an accident that occurred in October 2017? Just in the ordinary course of things. They were paying the premiums all along. They stopped paying at a certain point. But the accident had occurred while they were paying premiums. You would be responsible for that. If it were later determined that they owed more premium, they did not live up to their end of the bargain. I'm trying to understand your argument. Judge Block here said, look, you didn't cancel the policies properly. But even if we assumed you cancelled the policies when you say they were cancelled, this accident occurred while the policies were in effect. Am I understanding that your argument is that the policy, in essence, becomes not in effect if it's later determined that the premiums paid were not adequate premiums because, in this case, their profit margin was higher? That's what you're saying. You're saying because when they paid the premiums, while Mr. Ventura or the company was covered under this policy, up through 2018, they were underpaying us. And because they were underpaying us, we now don't have to cover any incident that occurs under the policy. Is that what you're saying? That is what we're saying, Your Honor. There has to be a mechanism by which the insurer can capture this. But weren't you made whole by getting the money that you were properly owed? Because you got a judgment of a certain amount of money that you claim were owed, albeit by default. But you got a judgment that for the additional premiums that were owed. So why should your client not have to indemnify and cover for an incident that occurred during that period when, at the end of the day, you're getting your – presumably, you'll collect on the judgment. I take it your answer is going to be you're not collecting on the judgment because DeSano is insolvent. And if DeSano were solvent, we wouldn't have this problem because DeSano could take care of the damages. The judgment of Judge Garifuss was you're entitled to a judgment for the amount of premium owed. And in the event that that premium is not paid, as it's an express condition for coverage under the policies, and you're entitled to a declaration of no coverage under those policies, there is no other way for an insurance company to capture the amount of exposure they're facing. I mean, the insured will come in and say, we're doing $5 million in work next year. The premium is computed based on that, the advance premium. They find out after the policy is over, well, the insured did $10 million of work. So they're now facing double the exposure under those policies based on the insured's under-representation of their gross receipts. I mean, this is a gentleman who was injured performing the job, right? And the premiums were set based on the amount of profit. But it was to cover, this was to cover an injury, correct? Well, the policies are to cover anything that occurs during the policy period. But if an insured's doing $5 million worth of jobs as opposed to $10 million worth of jobs, there's a lot more potential for labor law claimants and for injuries on the job, which is the... The premium may have been higher because you're covering more people. Does that mean then that the insurance company doesn't get to cover, you know, assuming they get a judgment for the additional amount, does that mean that the policy is void and you don't cover anyone? Not just 50 employees, you don't cover 70 employees for the entire policy period? Is that what you're saying? If the insured does not pay the premium, then... No, they pay the premiums, but they don't represent... In my hypothetical, you set a premium based on how many employees, the coverage. I'm covering 50 employees, but it's not accurately represented by the insured. The insured really has 70 employees. Later, it's determined they had 70. The premium should have been higher because it's more people being covered, more potential exposure. Are you saying then that if somebody gets injured, the insurance company is off the hook for paying any injury whatsoever under the policy term? Well, not necessarily. In this case, American Empire did make payments for claims, did defend claims. In fact, American Empire was defending the insured dissono in the Ventura and the IEJK claims. Yeah, but then it stopped. Because it got a judgment. Anybody who's late in filing a claim is out of luck. The people who filed before you figured this all out, if the case was finished, they got their judgments paid, they got their coverage, and you're saying you're not going to sue them to get that money back because you paid it out legitimately. But somebody who was injured later in the policy term so that his case is still going on at the time that you figure out this policy, they lose out. And I guess what I'm saying is I understand your point about fairness to the insurance company, but what about fairness to people like Valise, who signed a contract with dissono and asked for a certificate of insurance as a condition of that, and he provides it, and you stand behind that, you said, yeah, that's right, he's insured with us. And now it turns out, after the fact, that he wasn't insured with you, dissono wasn't insured with you. How is that fair to Mr. Ventura? How is that fair to Valise, who relied on the fact that there was insurance coverage, which, in effect, you would have been prepared to, if you didn't, maybe you even did, represent to these people that dissono is insured by you? Your Honor, I'm not sure fairness is. Doesn't count. Only fairness to the insurance company counts. Not at all. However, if Judge Garifuss had held otherwise, as Judge Block held, that decision essentially could wreak havoc in the New York insurance market, because the only companies that will underwrite insurance policies in New York for New York construction are basically surplus lines insurers, such as American Empire, which is free from a lot of the constraints of rate and different regulations. Because of the fact that it is such a volatile market and the New York labor law results in so many claims that most insurers have left the market. And the only way for American Empire or these other excess line insurers to truly capture their exposure is by doing post-policy period audits. Which works out fine if the company that is being insured has the money and pays the premium after the fact. Yes. Everything is hunky-dory then. The problem only arises if they don't have the money or they can't or won't pay those excess premiums. And at that point, even if that's several years after, the policy period would have ended anyway. Well, unfortunately, it's a financial reality that companies cannot stay in business unless they receive the agreed-upon consideration for the coverage that they're providing. And the consideration... But you take certain risks. Of course. But the risks were not known to be what they actually were by an insured underrepresenting their premium, their receipts.  Well, do you know that they underrepresent? Was there a fraud here, or was it just they had a really good year and didn't set aside enough money to pay the premiums? There's no requirement of any showing of intent. It's a fact. It's a fact that if they did $2 million in business... So they didn't underrepresent anything. They represented something, and then it turned out, given subsequent events, that they, under the policy that you wrote, owed more money, which they couldn't pay. Based on experience, some of them do underrepresent. I'm sure some of them do. And I'm sure you have some ability to investigate to see whether what they're presenting is reasonably relied upon or not. And that is done. American Empire looks at prior years' receipts. And if they get the sense that mid-year... I mean, the insureds are given more than adequate opportunity to make this right. If it appears during mid-policy period that the receipts are more than were initially estimated... Okay, I see. So let's put fairness aside and get back to the technicalities. Why is this not a case in which you cancel the policy as of an effective date, which was long after the injury was incurred in this case? Why doesn't that matter? Well, the issue is not cancellation here. The issue is the premium that's owed as a result of the post-policy period. So then you're... I don't understand. There's either rescinding or canceling. Is there something else that exists that I'm not aware of? We're seeking a declaration of no coverage. But why is there no coverage? Because the insurance company has not received the agreed-upon consideration. And therefore the policy is void. No? The policy either exists or it doesn't exist as of the time of this accident, I would have thought. Well, we're not looking for a declaration... Okay, maybe this will help. I was under the impression that you were arguing that it was void. Can you explain to me what you think the difference is between void and no declaration of whatever it was you just told it was that was not void? If the American Empire was seeking rescission of the policy... Okay, we know that you're not seeking rescission. Right, which would make the policy void.  I'm sorry. This is going to be really helpful because we're going to have to produce a writing on this. So I do need... You're saying that you want a declaration of no coverage. Yes. Is that correct? I'm just trying to remember what you just said. What is the difference between no coverage and that the contract that you had is void? I guess some of it may be nomenclature, but if we were seeking a declaration that the policy is void, the insurance company might seek to recover back the monies that had paid out under claims. The American Empire is not seeking back any of that, not seeking... Well, that's very generous of you, but that has nothing to do with this case, right? You could, if the policy was void from the beginning, you could go back theoretically and try to recover things that were paid out, but we're dealing with these people, and these people relied on the policy. You were paying all the bills, and then you decided that you don't have to do it anymore. Now, it would seem to me that that has to be because either the policy doesn't exist anymore, which would be void as of some other date, or it's canceled as of some other date. You actually purported to cancel it as of a particular date, which it seems to me if you cancel it effective May the 18th, May 2018, that means that you were still covering accidents that occurred in October 2017. American Empire was covering. Well, but why aren't you continuing then? If the policy was canceled as of May, and you're obligated to defend an accident that occurred the previous October, why don't you continue to be responsible for paying that? Just as if the policy expired as it did in June or July or whatever it was of 2018, you would then say we can wash our hands now of paying the legal expenses of the accident that occurred in October 2017. If you cancel it effective May 2018, why is that any different than it expired a little bit prematurely? Because the insured ignored its obligation to pay premium under the policy. Well, maybe you don't owe anything to them, but I'm still worried about the people who relied on the existence of this policy. And you're saying, in effect, it seems to me it wasn't void in October 2017. It wasn't canceled by October 2017, and it didn't expire by October 2017. And you are nevertheless entitled to a declaration that the October 2017 accident is not covered. And the best thing you've told me so far is that that's what Judge Garifuss thought, except that he thought that in a situation where there was a default by DeSano, in a litigation in which Lilies and Ventura were not involved. So I'm still having trouble just getting what the theory is. Well, once the insured's rights under policy are extinguished, which they should be by nonpayment of premium, I believe... But when did that happen? When did they get... Extinguished. Extinguished. When we got the judgment from Judge Garifuss. No, that cannot be the answer, because what if Judge Garifuss was wrong? I mean, that's fine vis-a-vis DeSano. If DeSano comes in and says, we actually paid these bills now to the Lilies and company, and we want to be reimbursed. Well, sorry, DeSano, you defaulted, and you're out of luck in that case. But if other people are not bound by that judgment, how does that judgment help you? We would submit that the law is clear that claimants under policy possess no greater rights than the insured does. If the insured's not entitled to coverage under policy, then a claimant under DeSano's policy is similarly not entitled to coverage. It would not make any sense to expand claimant's rights other than an insured's rights. If an insurance company did not receive the compensation and the consideration for its part of the bargain, then it should not be required to provide coverage for claims made under the policy. There's no other way to keep the balance of the insured's obligations, the insurance company's obligations. So you're saying that Judge Garifuss' default judgment does bind everybody in the universe? Once – it was – I would like to note it was on default. However, DeSano appeared in that litigation.  Chief Magistrate Pollack requested that DeSano's attorney have the principal appear in court and explain to her in the open record of the implications, the possible implications of their failure to cooperate in this regard. They blatantly disregarded the order of the federal court that they were supposed to pay the premium and that they should – if they didn't have a reason, they felt there was a reason why they didn't owe the premium, they needed to come forward with it. She disregarded it. So why did you cancel the policy effective May 2018? What does that mean? What was that action? Because the – this insured had two years' subsequent policies. The first policy ended in 2017. The second policy incepted in 2017 to 2018. Once the first policy period was over, American Empire's auditors reached out to DeSano and said, we have to audit your gross receipts for the first policy. They failed to do so or an audit was conducted and they owed money and didn't pay. Right, exactly. So this second policy hadn't expired yet. But they said, well, we're not going to continue with this policy, you know, given your, at this point, refusal to pay your premium. Right, exactly. And they did that retroactive to May 2018. That was the date of cancellation, yes. So why does that affect something that happened in October of the previous year? Because the issue still remained that DeSano had not paid its premium and that American Empire had not – So why wasn't it canceled effective to the date when it was entered? Because as all the issues regarding cancellation note, you can't cancel a policy retroactive unless you seek rescission or unless you file a declaratory judgment. But that's what you did. You did make it retroactive. So that was just a mistake? No, we filed the declaratory judgment seeking a declaration of no coverage. Which is, I believe, the recognized procedure if an insurance company – But didn't that happen in January of 2018? When did the declaration by Judge Garifas happen? In 2021. In 2021. So I'm still trying to figure out what is the significance of May 2018? That was just the date that the second policy was canceled because of – Well, it wasn't. No, it wasn't. It was canceled in 2021 retroactive to May 2018. You picked that date. I'm trying to understand why that date was selected. Because that was the date. It was determined while that policy was going on. That was a current cancellation. It was 2018, and the insurance company saw that DeSano was not cooperating with the audit or paying the premium for the first policy, so they canceled the second policy. Thereafter, DeSano was presented with – But they did not do that, actually, in May 2018, right? They did not send a notice to anyone saying, this policy is canceled for nonpayment of premiums or noncooperation with the audit. Because if they had done that, then everybody would have been in a position to seek other coverage for the remainder of that policy term. But they didn't do that until several years later, and they made a retroactive cancellation effective May 2018. Is that not the case? That is not the case. When the cancellation was done in 2018, the appropriate parties, whoever was supposed to be noticed, were noticed. At that time, it was not American Empire's intent to seek a declaration of no coverage because it was still pursuing – But I think the confusion was the notice – I thought Judge Block said the notice was sent, but the notice was defective, is what Judge Block – which you disagree with. I thought that's what Judge Block found. The notice was defective. And then Judge Block said even if the notice had been adequate and had properly canceled the policy as of May 2018, even if that notice had been adequate, this incident occurred in 2017. They were still covered by the policy. You still have an obligation to defend and indemnify. Isn't that what Judge Block found? I believe so. Okay. So can I just, as a matter of housekeeping, I recognize that the district court issued an electronic order on September 8, 2023. There were some non-appearing defendants that were still not listed as terminated. Do you believe that that was a mistake? Yes. All the non-appearing defendants were either dismissed – I had sent a letter to the court outlining the disposition of the claims against the non-appearing defendants. Yes, right. They were all no longer in the case, right? Several of them were dismissed, and the rest of them – we had filed a default judgment against them. My question is how do we clear up the housekeeping matter, that the docket still doesn't list them as having been terminated? If there's something I can file – okay, we'll file it. They've all been terminated. The only remaining parties are American Empire and Ventura and IEJK. Yeah, but that still leaves me with the fact that, although you both think that there is appellate jurisdiction here, there actually isn't because the Lees counterclaim for attorney's fees is not a claim for, like, fee-shifting attorney's fees or sanction attorney's fees involving this case, where the law is if you have terminated all the substance and the only thing that remains is an attorney's fee bill for this case, we can take the appeal. This is a case where the argument is the attorney's fees in question are contractually obligated, according to the Lees. They're not seeking attorney's fees for the fact that you put them through this case. They're seeking the fees that they are owed, according to them, under the contract. And if that counterclaim has not been resolved finally, I don't see how we have appellate jurisdiction. We would submit that Judge Blatt's memorandum and decision, which was later encapsulated in a judgment, disposed of the Lees counterclaim by granting it and saying that they are entitled to attorney's fees. But that's like a judgment that says you're entitled to summary judgment on liability will determine damages at a trial. That's not a final judgment that is appealable. Judge Blatt said the Lees are entitled to recover on this counterclaim but did not settle what the amount of the counterclaim would be. So that's why it seems to me that that is not a final judgment. Your Honor, we would respectfully submit that under cases cited in our court report. Yeah, but they were all cases of the other kind of attorney's fees where people are seeking fees for this case either as a sanction for bad faith or because it's a fee-shifting statute that authorizes after the plaintiff's win that the defendant has to pay their attorney's fees like civil rights cases. The Supreme Court has clearly distinguished that kind of attorney's fees case from a case where the attorney's fees are being sought as an item of contractual damages. But anyway, we'll just have to sort that out. I do understand what you're saying in the supplemental briefs. You're going to get some time on rebuttal. Thank you. May it please the Court, Vincent Chirico for appellee. Can you actually start with the jurisdictional issue? Yes. My contention as appellant contention is that Judge Block actually did grant the lease fees and it was just a question of how much. Can you please respond to the distinction that Judge Lynch is suggesting in the cases among different types of attorney's fees and why one would, depending on, yes, I think you understand. Yeah. This is, I believe this is more than that. I believe this is actually a summary judgment grant on the fees and the only thing that Judge Block didn't do is submit the amount because he couldn't because there was no bill submitted to him. Are there cases that you rely on that say that when attorney's fees are left to be determined later under the circumstances of this case that that would still entitle us to view it as a final judgment for purposes of appeal? I don't have that, Your Honor. I don't have cases on that. I would defer to the lease counsel to address that issue. And I know you're a remaining plaintiff in this case or defendant, I should say, because they were seeking declaratory judgment and this may be more appropriate for your opponent upon rebuttal. But in response to the remaining defendants, it's my understanding from looking at the docket sheet that on September 8, 2023, Empire decided not to perfect the default judgment as to the remaining defendants. And the court sent a letter in, document 85, and then on September 8, the court, Judge Block dismissed the complaint against those defendants for whom they had not sought to perfect their default judgment. So they are out of the case now. Is that correct? That's correct. But it's only you and your, not co-counsel, but the co-defending counsel that are left in the case. Yes, Your Honor. So as far as that, for purposes of, you know, whether there's final judgment, that's not an issue. That can be dispensed with because even the docket number for September 8, 2023, indicates that the plaintiff has decided not to pursue their claims against the remaining defendants. So it's not just to pursue the appeal, but to pursue any claims. So I guess I have the same question that Judge Pettis asked, which is, why is this a final judgment when attorney's fees are outstanding? I asked for a case, but if you don't have a case, why? My contention is that it's a partial final judgment, which is appealable in my understanding, because the substantive issues were fully briefed and decided. The substantive decision to defend and identify was finally decided. But that's Rule 54B, which requires the district court to certify that this is appropriately taken to this court, and that never happened. That's correct, Your Honor. Okay. So the partial summary judgment rule doesn't really help you, or help them, to get this case here. I understand that you guys also would like us to resolve the merits of this. Oh, absolutely. Mr. Ventura's been waiting seven years, Your Honor. Yes. And we have an inquest ready to be scheduled down in the state court. I understand. Yeah. If I may address the substance, there's no question this was a cancellation. Appendix page 556, 558, entitled, Cancellation Audit Endorsement to May 26, 2018. To your point, Judge Lynch, they got the premiums that they were due up to May 26 of 2018. That's what the premium audit calculated. Then they would do additional premiums afterwards. So had they canceled properly, following the statute, following their own policy language that required 10 days notice before the effective date of the cancellation, then that would have been a fine cancellation as of May 26, 2018. They would still be on the hook to cover Mr. Ventura's accident eight months before that. So I think that's very clear. I think the collateral estoppel issue is also largely resolved because the merits of whether Mr. Ventura is entitled to indemnity on this never really addressed on the merits, not by Justice Garoff's and not until we got into the case. In fact, we tried to get into the case, and the American Empire vociferously opposed that. Of course, you could have appealed that judgment. In fact, it wasn't even a judgment. The magistrate judge entered a report and a recommendation recommending that intervention be denied, and you had a right to file objections with the district court and get the district court to decide independently, not even just to review the magistrate judge's decision, to decide independently whether intervention should be granted, and you didn't take advantage of that. That's correct, Your Honor, because by that time, the second action, this present action, had already commenced, and we appeared in this action. So there was sort of like an overlap in that regard, and now that we're finally in, we figured since we were collateral, we had stopped from addressing it the first time around, but we could have appealed it. Now we get our chance to have our substantive date in court. Can you describe the relationship between DeSano and the Lees, and did the contract between DeSano and the Lees require DeSano also to reimburse and indemnify the Lee defendants? In the absence of coverage, Your Honor, yes, DeSano would also be required to defend and indemnify DeSano, and that's the reality. That's the fact pattern you, Your Honor, presented earlier in Appellate's argument. So you have, you know, you have an insurance carrier who provides some kind of assurance to the Lees that they're covered for any accidents that happens on their property during that period of time. The insurance construction industry is a behemoth, and it relies on various different assurances of this, of which this is a very important one. So to rely on an insurer to say, okay, we predict that we're going to have 70 employees and we're going to have X number or X amount in revenue over the next policy period, what appellants are essentially saying, you're not allowed to exceed that. So if DeSano does very, very good business and it turns out that their predictions are incorrect, well, they have no coverage at that point because if they don't pay the additional premium, at that point all bets are off, leaving the Lees hostage. So you're saying that indemnity provision, that secondary indemnity provision only kicks in if the primary, if there is no insurance coverage? That's correct, Your Honor. Is that what you're saying under the contract? Yes, that's correct, Your Honor. Thank you. So there's no question this was a cancellation. Appellants contend that this is not a rescission, so it's not a void-at-the-initio situation. So we have an accident that happens eight months before the effective date of the cancellation. It would wreak havoc if Mr. Ventura, if the Lees were not able to rely on that insurance in coverage over premiums that they have no responsibility to pay and be relying on somebody to either intentionally or neglectfully or because they go out of business decide not to pay the premiums. And that's what would wreak havoc here. If American Empire's contention is correct, then what's to stop every insurance company in the state of New York from issuing only premium border policies to blind their eyes to what the expectation of future profit is? And then once they don't get that payment, say, okay, we're not responsible for paying void-at-the-initio. That would completely overhaul the insurance industry in the state of New York. There's no single precedent that allows that. In fact, American Empire has lost on this very issue repeatedly in the state courts. And I cite to LNG and I cite to LCS that's in our brief. So they're looking for another forum in which to test their theory. And our position is that this is essentially a settled issue. In fact, the experts on it, the Department of Financial Services Office of General Counsel, specifically said failure to pay outstanding increased premiums as the result of an audit on a prior policy constitutes nonpayment of premium for which insurance law 3426C applies. Therefore, whether they violated their policy 10-day notice provision or whether they violated the statutory construct on the 3426C, either way it's improper to retroactively cancel policy because somebody didn't pay future premiums. Or even if they could retroactively, and they are retroactively canceling it in the first place because this cancellation is happening much later after all this litigation has gone on. But it is done retroactive to May 2018. So even if that was allowed, they would still, in your view, be responsible for the expenses arising from an October 2017 action because the audit premiums were not due until even as they represented to us now. They were calculated in approximately May of 2018. That's correct, Your Honor. They don't become due retroactive to the beginning of the policy period. They become due once they're calculated and billed for that. And that's the last point in our brief, Your Honor, which is they kept the premiums up to May 26, 2018. They never refunded the premiums. To say that the policy is void of an issue is to say, okay, there was never an insurance contract. They kept the premiums. They want more premiums, and they're not allowed to do that under New York law. So the only reasonable reading of this is, as Judge Lynch, you indicate, that, okay, even if they provided notice under the statute or under the policy, it would still be as of May 26 of 2018. So Desano did everything to protect us, Lees and Ventura, up to May 26 of 2018, seven months after Mr. Ventura's incident. Okay. Thank you so much. We're going to hear from your colleague. Thank you. May I please support? Good afternoon, Your Honors. Or good morning, rather. Magdalene Sconzos for the appellees, Unlee and Yunlee Ito. I don't want to belabor too many of the points. The jurisdiction issue, I think, and the attorney's fees. So the attorney's fees. In the decision below, Justice Block cites to, I just had it before me, a decision saying why the issue of how much is owed in the attorney's fees can be made later. In our brief, our supplemental brief, rather, to this court, I cited Sprague v. Taconic National Bank, 307 U.S. 161, 1939. Pretty much that decision states that the power of a federal court to award counsel fees as per an application that was filed several years after the entry of a judgment on the merits is collateral and independent. How would you respond to Judge Lynch's interpretation of these cases suggesting that there's something different about fee-shifting statutes versus attorney's fees that are set as a matter of contract? You might want to look at Ray Howlick Gravel Company, 571 U.S. 177, at page 190, where the court says the situation would differ, the situation being fee-shifting statutes. The situation would differ if a party brought a freestanding contract action asserting an entitlement to fees incurred in proceedings other than the proceedings in which the purportedly final judgment was entered. That's what I'm basing this on. Unfortunately, Your Honor, I'm not. Yeah, I understand. This is a pretty arcane matter, I grant you. The issue of fees aside, I guess what I want to stress to this court is that Judge Block was absolutely correct for the reasons he said he was correct. He cited to law in support of his findings, five of which decisions weren't even mentioned in the appellant's briefs or appellee's briefs sets forth which cases those are, and set forth for this court. But Your Honor said it best, Judge Lynch. I mean, one possibility is we could do a Jacobson remand to the district court and ask the district court whether it would certify a partial final judgment under Rule 54B. And I imagine there are some good reasons why Judge Block might want to do that, including the reasons why he didn't want to decide the amount of the attorney's fees issue in the first place, which is until we figure out the liability issue, that's the really important thing in this case. So maybe the only problem is that that certification was not made. But, you know, if you want to take a look at that case and tell me maybe I'm wrong in my interpretation of it, that might be helpful. Give us some time to do that. Certainly. Do you guys want to we will issue an order shortly thereafter indicating letter briefing on this matter. We'll figure out the details later and send them to you. Be on the lookout for that. On the issue of the attorney's fees and whether it's a final. Exactly. All right. And you still have some time on the clock. You don't need to use it, though. No, I mean, I don't want to belabor the point. My trusted, esteemed colleagues, and particularly Mr. Chirico, have made the points. Okay. But I was going to say, as Judge Lynch said it best, the Lees hired DeSanto as a general contractor to erect a building in Astoria. You don't generally choose a general contractor with no insurance intentionally, right? So when we hired, when the Lees hired their general contractor, there was insurance. There was a reliance upon that insurance. And not only was it done at the time of hiring DeSanto, once we answered the complaint, we tendered our defense and indemnification to DeSanto's commercial general liability care. And they took it. Right. And who was defending the case and making offers under the policy on that case? That's further reliance that there was coverage and that coverage was in existence. So, Judge Lynch, you said the point. I'm just reiterating that point. It would be unfair. I mean, I take it that when the Lees signed that contract with DeSanto, he had to provide a certificate of insurance. Yes. There was a dispute below as to whether or not there was an insurance procurement requirement, which was not required. There was an issue as to whether or not it was a binding contract. And the lower court punted that issue for the time of trial. Liability on the labor law 240 claim was issued, but the issue as to the cross claims was put at the time of trial. Since then, there was a default against DeSanto because there was no coverage. There was no appearance. So, for all intents and purposes, there's no defense to that claim anymore that there's no valid contract in effect there. It's not binding. Thank you so much. Thank you. Ms. O'Connor, you have two minutes. I'm going to keep you to that because we kept you so long before. Thank you. Just quickly, I wanted to address something Mr. Chirico stated. The issue of the indemnity obligation under the Lees, I mean, under DeSanto's contract to the Lees, the obligation is there regardless of insurance coverage. So, I'm not sure, you know, why Your Honor was asking that, but that indemnity obligation exists regardless of coverage. The L&G Masonry case that Mr. Chirico cited, not the same situation as we have here. In that case, the insured failed to submit to an audit, and in that case, the court said, you cannot seek a declaration of no coverage based upon failure to submit to an audit because there may not be any premium owed. I think there was an implicit recognition there that payment of premium is an express condition to coverage under the policy. And again, I understand various parties' reliance on the fact that there's insurance in place, but that does not change the fact that an insurance company cannot exist and cannot continue doing business in New York when it is forced to provide coverage for which it has not been compensated adequately. The insurance, and, you know, as far as when the premium is paid. When does the premium become due, the additional premium as a result of the audit? Well, the advance premium is paid at the beginning. Then the policy provides that upon the expiration of the policy, that's when the audit will be done. The auditors usually reach out to the insured, you know, a month before the policy ends and say, you know, you need to get your financial information together. Not surprisingly, I'm sure you would imagine, the insureds are not always cooperative and they fight. Very often we have to bring a lawsuit just to get them to submit to the audit. Then the documents go back and forth. As soon as all the documentation is in hand, the audit is presented to the insured and we say, do you agree with it? If you agree with it, this is how much is owed, you need to pay it. This, unfortunately, results in litigation all the time. I understand that, but you have not suggested to me that this insurance premium, the additional premium as a result of the audit, became due prior to this accident. Well, the premium couldn't possibly become due before any of the claims on the policy because it's not completed until after the policy. Yeah, right, because that's the way you decided to do it. Well, there's no other way to do it, really, if you're trying to capture. Well, no, actually, in this case, you did it. Now, granted, that's because DeSano owed money on the previous year, but you are purporting to cancel the 2017 policy as of the determination that was made in May of 2018. So something must have been due at that point and not paid. What I'm having trouble understanding is if you don't calculate the additional premium until after this policy has already expired anyway, how can it be that the policy is being canceled for nonpayment of a premium that was not in fact due? In other words, there's not an obligation on the contractor, as far as you've suggested so far, to be sort of regularly updating the company on how much business it's doing and an ongoing calculation of additional payments that are due from them. The payments don't become due until very long after. So it's not quite the same thing as an insured who is supposed to pay a premium every month and at some point stops paying and then the policy is canceled for nonpayment. This is an amount that becomes due years after everybody's already acted in reliance on the policy. Unfortunately, there is no way to capture a construction contractor's exposure adequately other than after the end of the year. I believe workers' compensation policies are rated the same way on post-policy audits because construction is a very varied type of business. I mean, they may get a new $10 million job they didn't anticipate at the time they estimated their premium. That seems to me, though, the problem is the policies aren't worth anything because no one can guarantee that anyone is ever covered under this because they could stop being covered three years later when somebody gets an audit completed. Yeah, it doesn't usually take three years, but in any event— Well, this one did. It took a while. I mean, this didn't get— Well, because the audit was done, but the insured refused to pay. Right. So that's what—eventually we had to bring a lawsuit, and it wasn't until—we were giving the insured every opportunity to pay, and it wasn't until the insured finally said, that's it, I'm disregarding the federal court's direction, I'm not paying, and then American Enterprise— I think that someone's in contempt because they didn't pay a judgment that they can't afford to pay. It's not a matter of disregarding the judgment. They were told they owed the money, and evidently they didn't have it, or they chose not to pay it. Well, that's exactly one of the issues most of the time. We have reason to believe the insured could have paid. These construction contractors very often go out of business and just open another company to avoid paying their bills.